1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR THOMAS,<br><br>Petitioner,<br><br>v.<br><br>AUDREY GILL,<br><br>Respondent. | Case No.  1:13-cv-00159 GSA HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DENYING PETITIONER'S MOTION FOR DISCOVERY<br>[ECF No. 29]<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The parties have voluntarily consented to the exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1) for all purposes, including entry of final judgment.

Petitioner is currently in the custody of the Bureau of Prisons pursuant to a judgment of the United States District Court for the Western District of Pennsylvania entered on September 10, 2002, following his conviction for possession with intent to distribute cocaine and cocaine base. (Resp't's Answer, Ex. 1, Carr Decl., at ¶ 3.)  Petitioner was sentenced to serve a term of 210 months in federal prison. (Id.)

On February 1, 2013, Petitioner filed the instant federal petition for writ of habeas corpus in this Court.  The petition challenges the method in which the Bureau of Prisons ("BOP") has

calculated Petitioner's federal sentence.   Specifically, Petitioner complains that the BOP incorrectly determined the commencement date of his federal sentence.   He also complains that he was not properly credited with the time he spent in state prison, and that his federal sentence was to run concurrently, not consecutively, with the state sentence.   He further contends that the BOP abused its discretion in denying his request for a *nunc pro tunc* designation.

On September 20, 2013, Respondent filed a response to the petition for writ of habeas corpus.

On February 18, 2014, Petitioner filed a traverse to Respondent's response.   In addition, Petitioner filed a motion for leave to conduct discovery.

## DISCUSSION

I.     Jurisdiction

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.   See 28 U.S.C. § 2241.   While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991).   To receive relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.   See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole).

In this case, Petitioner challenges the execution of his sentence.   Therefore, the Court has jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

1    II.      Venue

2           A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file

3    the petition in the judicial district of the petitioner's custodian.   Brown, 610 F.2d at 677.

4    Petitioner is in the custody of the Bureau of Prisons at the Federal Correctional Institution in

5    Mendota, California, which is located within the jurisdiction of this Court.   28 U.S.C. §§

6    2254(a); 2241(d).   Therefore, venue is proper in this Court.

7    III.     Exhaustion

8           A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28

9    U.S.C. § 2241 must first exhaust available administrative and judicial remedies.   Brown v. Rison,

10   895 F.2d 533, 535 (9th Cir. 1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th

11   Cir. 1984).   It is only after a petitioner has fully exhausted his administrative remedies that he

12   becomes entitled to present his claims to the federal court.   See United States v. Mathis, 689 F.2d

13   1364, 1365 (11th Cir. 1982).   However, the exhaustion requirement was judicially created; it is

14   not a statutory requirement.   Chua Han Mow, 730 F.2d at 1313; Montgomery v. Rumsfeld, 572

15   F.2d 250, 252 (9th Cir. 1978).   Because exhaustion is not required by statute, it is not

16   jurisdictional.   Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.

17   1987); Montgomery, 572 F.2d at 252.   "Where exhaustion of administrative remedies is not

18   jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach

19   the merits, or require the petitioner to exhaust his administrative remedies before proceeding in

20   court." Brown, 895 F.2d at 535.

21          The Bureau of Prisons has established an administrative remedy procedure governing

22   prisoner complaints. The procedure is set forth at 28 C.F.R. §§ 542.10 et seq.  First, an inmate

23   must attempt to resolve the issue informally by presenting it to staff before submitting a Request

24   for Administrative Remedy.   28 C.F.R. § 542.13.   If dissatisfied with the response, the prisoner

25   may proceed with the formal filing of an Administrative Remedy Request.   28 C.F.R. § 542.14.

26   Upon denial by the warden of the institution, the prisoner may appeal the decision by filing a

27   complaint with the Regional Director of the Bureau of Prisons.   28 C.F.R. § 542.15.   The

28   Regional Director's decision may be appealed to the General Counsel in Washington, D.C.   Id.

1    Appeal to the General Counsel is the final step in the administrative remedy process.  Id.

2        In this case, Respondent does not contend that Petitioner has failed to exhaust his

3    administrative remedies.  From Respondent's exhibits and attachments, it appears that Petitioner

4    exhausted his administrative appeals. (Resp't's Answer, Ex. 1, Carr Decl., at ¶ 12.)  Therefore,

5    the Court will review the claims.

6    IV.    Background[1]

7        On March 30, 2001, Petitioner was arrested by state authorities.  He was released on bail

8    on April 18, 2001, and was re-arrested on April 19, 2001.  He made bail again on April 23, 2001,

9    but was returned to state custody on May 1, 2001.  After May 1, 2001, he remained in the

10   primary custody of the State of Pennsylvania.

11       On May 16, 2001, an indictment was filed in the United States District Court for the

12   Western District of Pennsylvania charging Petitioner with possession with intent to distribute

13   cocaine and cocaine base.  On May 25, 2001, Petitioner was borrowed from the state by federal

14   authorities pursuant to a federal writ of habeas corpus ad prosequendum.  On June 6, 2001, he

15   was returned to state custody.  On July 6, 2001, August 15, 2001, and August 22, 2001, he was

16   charged with several state offenses and continued to be held in state custody.  On October 18,

17   2001, he was borrowed again from the state by federal authorities pursuant to a writ of habeas

18   corpus ad prosequendum.  On September 10, 2002, Petitioner was sentenced in federal court and

19   the judgment was lodged against him by the U. S. Marshals Service as a detainer.  Petitioner and

20   Respondent agree that "[n]either the sentencing hearing transcript nor the judgment and

21   commitment order reflect the court's intent to run Petitioner's federal sentence concurrent to his

22   pending state charges."  (Pet. at 39.)  He was returned to state custody on September 11, 2002.

23   On July 10, 2003, he was sentenced in state court to an indeterminate state term.  The state court

24   ordered that the state term "is intended to be consecutive to all periods of incarceration ordered

25   through the federal sentencing process."  He then began serving his state sentence until he was

26   paroled from state imprisonment and turned over to federal authorities on May 13, 2009,

27

28   [1] The factual background is derived from the Carr Declaration and exhibits attached to Respondent's answer.

1   pursuant to the detainer.  The BOP computed Petitioner's term of imprisonment as commencing

2   on the date the state turned him over to federal authorities on May 13, 2009, following

3   completion of his state prison sentence.

4         Utilizing the BOP's administrative remedy process, Petitioner requested a *nunc pro tunc*

5   designation to the state facilities he had been housed at prior to his parole.  Pursuant to its policy

6   set forth in Program Statement 5160.06, *Designation of State Institution for Service of Federal*

7   *Sentence*, the BOP followed its procedures and declined to designate the state facility for service

8   of the federal sentence.

9   <u>V.     Review of Claims</u>

10        <u>A.     Commencement of Federal Sentence</u>

11        Petitioner first contends his federal sentence should have been computed to reflect that

12  his federal sentence commenced on either May 18, 2001, or September 10, 2002.

13        The authority to compute a federal prisoner's sentence is delegated to the Attorney

14  General who exercises it through the Bureau of Prisons.  <u>United States v. Wilson</u>, 503 U.S. 329,

15  334-35 (1992); <u>Allen v. Crabtree</u>, 153 F.3d 1030, 1033 (9th Cir. 1998), *cert. denied*, 525 U.S.

16  1091 (1999); 18 U.S.C. § 3621(a).

17        18 U.S.C. § 3585 provides:

18          (a) Commencement of sentence. - A sentence to a term of imprisonment
    commences on the date the defendant is received in custody awaiting
19  transportation to, or arrives voluntarily to commence service of sentence at, the
    official detention facility at which the sentence is to be served.
20

21        Here, after he was sentenced on September 10, 2002, Petitioner was returned to state

22  custody to continue serving his state sentence.  Petitioner was not taken into federal custody to

23  begin serving his federal sentence until May 13, 2009, when he was paroled from his state

24  sentence.  Pursuant to § 3585(a), the BOP properly determined the commencement of

25  Petitioner's federal sentence to be May 13, 2009.  In addition, Respondent correctly argues that

26  the sentence commencement date cannot precede the date of sentencing insofar as § 3585(a) does

27  not permit it.  Further, the BOP's rejection of Petitioner's request to set the commencement of

28  his sentence to May 18, 2001, or September 10, 2002, was proper since Petitioner was not in

1   custody awaiting transportation to the official detention facility, nor did he arrive voluntarily at

2   the official detention facility to commence service of his federal sentence.

3          B.      Designation of State Facility

4          Petitioner next claims the BOP should have designated the state facility for service of his

5   federal sentence *nunc pro tunc* to September 10, 2002, which was the date he was sentenced and

6   subsequently returned to state custody.

7          Pursuant to 18 U.S.C. § 3621(b) and Program Statement 5160.05, the BOP has the

8   authority to run a federal sentence concurrent with a state sentence or designate a state facility

9   for service of the federal sentence if it is consistent with the intent of the federal sentencing

10  court.  A *nunc pro tunc* designation is a mechanism whereby the BOP may commence a sentence

11  as early as the date of imposition, even though the prisoner was not in federal custody.  The

12  Ninth Circuit has stated that "[s]uch a designation by the BOP is plainly and unmistakably within

13  the BOP's discretion and [the court] cannot lightly second guess a deliberate and informed

14  determination by the agency charged with administering federal prison policy."  Taylor v.

15  Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002); see also McCarthy v. Doe, 146 F.3d 118, 123 (2d

16  Cir. 1998) (BOP is given broad discretion to grant or deny a request for *nunc pro tunc* relief after

17  the request is given "full and fair consideration"); Barden v. Keohane, 921 F.2d 476, 478 (3d Cir.

18  1990) (decision to grant *nunc pro tunc* relief is within the discretion of the BOP).  The BOP's

19  discretion, however, is constrained by 18 U.S.C. § 3584(a), which requires that "multiple terms

20  of imprisonment imposed at different times run consecutively unless the court orders that the

21  terms are to run concurrently."  In determining whether to run a sentence concurrent or make a

22  *nunc pro tunc* designation, the BOP considers several factors including: (1) whether the federal

23  court ordered the sentence to run concurrently to a state sentence; (2) whether the federal court

24  recommended non-federal confinement; (3) whether the federal court ordered concurrent service

25  after imposition of the sentence; (4) upon an inmate's request; and (5) whether the state court

26  requested the sentences be run concurrently.  (Resp't's Answer, Ex. 1, Carr Decl., at ¶ 7, Attachs.

27  I, J.)

28         Here, as previously noted, the federal sentencing court was silent as to whether the

6

1   federal sentence was to run consecutively or concurrently to any state sentence yet to be

2   imposed. The sentencing court's silence on the issue means the federal sentence was to run

3   consecutively to the state sentence. <u>See</u> 18 U.S.C. § 3584(a); <u>United States v. Chea</u>, 231 F.3d

4   531, 535 (9th Cir. 2000) ("In the absence of an order to the contrary, a federal sentence is to run

5   consecutively to a prior state sentence."); <u>United States v. Wills</u>, 881 F.2d 823, 826 n. 2 (9th Cir.

6   1989) (noting that under § 3584(a), sentencing judge's silence as to relationship with other

7   sentences means sentence is consecutive).

8       Petitioner argues that comments made by the federal court demonstrate its intent to run

9   the federal sentence concurrently. Petitioner notes the court's comments as follows:

10      THE COURT: Number two, if – as I say, I don't want to discuss this, but you've
        raised it, if you were found guilty, you're going to be entitled to time served for
11      anything in connection with your detention on this case. I don't know the overlap
        between the state prosecution and this case, and that would be a matter for
12      computation at a later time, if you're ever convicted.

13      MR. THOMAS: Yes, sir.

14      THE COURT: But you are absolutely entitled to credit for time served - -

15      MR. THOMAS: Okay.

16      THE COURT: - - on this prosecution.

17  (Pet. at 41.)

18      Respondent correctly points out that the federal court's comments demonstrate that it was

19  reluctant to discuss the subject, but even so, the court was referring to the specific time Petitioner

20  was serving "in connection with [his] detention on this case." In addition, any determination on

21  the credits Petitioner would receive would be handled during sentencing. There is no indication

22  that the federal court intended to run a federal sentence concurrent with any potential state

23  sentence. Moreover, the state court indicated its intent that the state sentences run consecutive to

24  the federal sentence already imposed.

25      In light of these facts, the federal sentence was properly determined to run consecutively

26  to the state sentence, and Petitioner fails to demonstrate that the BOP abused its discretion in

27  denying his request for a *nunc pro tunc* designation.

28  ///

7

C.      Primary Jurisdiction

Petitioner argues extensively that the state relinquished primary jurisdiction to federal authorities when Petitioner was borrowed from the state's custody via the two writs of habeas corpus ad prosequendum.

"As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration."  Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991).  A federal writ of habeas corpus ad prosequendum only serves to "borrow" the defendant from the state, and the state does not lose primary jurisdiction.  Id. at 1366-67 (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody); Taylor v. Reno, 164 F.3d 440, 444 (9th Cir. 1998) ("[B]ecause [petitioner] appeared pursuant to a valid writ of habeas corpus ad prosequendum, he was still in state custody when he was delivered to the federal court for the ... hearing and for the ... sentencing."); Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980) ("[I]f a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. . . . [Citation.]  A writ of habeas corpus ad prosequendum is only a 'loan' of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction. [Citation.] The state court has not lost its right to prosecute, convict, and sentence the defendant."); United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) ("A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.")

As noted by Respondent, the federal court ordered Petitioner "released" in the federal case following his arraignment.  Therefore, he was not being detained on the federal charges.  He remained in the primary custody of the state, and if the state had released him as well, he would not have been then turned over to federal authorities; rather, he would have been due to be released to the street.

Moreover, Petitioner's state sentence was credited with the time period from his arrest on

8

May 1, 2001, until his parole to the federal detainer on May 13, 2009.  (Resp't's Answer, Ex. 1, Carr Decl., at ¶ 9, Attach. D.)  Thus, the time Petitioner spent while borrowed from the state's custody via the writ of habeas corpus ad prosequendum was already credited against his state sentence.  18 U.S.C. § 3585(b) states:

> Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence*.

(Emphasis added.)

Crediting Petitioner's federal sentence with the time he was on loan from the state would be granting him double credit, which is not permissible under § 3585(b).  United States v. Wilson, 503 U.S. 329, 337 (1992) ("Congress made clear [in Section 3585(b)] that a defendant could not receive a double credit for his detention time.").  Accordingly, the BOP's computation of Petitioner's federal sentence was proper since Petitioner was given the credit against his sentence that was due.

### D.      Interstate Agreement on Detainers Act ("IADA")

Petitioner also complains that the two federal writs of habeas corpus ad prosequendum should be considered detainers under the IADA with the effect being a transfer of primary jurisdiction to the federal authorities.  In United States v. Mauro, the Supreme Court addressed this issue and held that a writ of habeas corpus ad prosequendum "issued by a federal court to state authorities, directing the production of a state prisoner for trial on criminal charges, is not a detainer within the meaning of the Agreement and thus does not trigger the application of the Agreement."   United States v. Mauro, 436 U.S. 340, 349 (1978).   Therefore, Petitioner's argument must be rejected.

### E.      Conclusion

In sum, the BOP correctly determined the commencement date of Petitioner's federal

9

1  sentence and awarded him the proper amount of credits.  The BOP further did not abuse its

2  discretion in running Petitioner's federal sentence consecutive to his state sentence, or in denying

3  his request for a *nunc pro tunc* designation.  The petition must be denied.

4             F.       Motion for Leave to Conduct Discovery

5          On February 18, 2014, Petitioner filed a motion requesting leave of court to conduct

6  discovery.  Petitioner states discovery is necessary to resolve a factual dispute regarding primary

7  jurisdiction.  Respondent did not file an opposition.

8          "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to

9  discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 903-05 (1997).

10  Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good

11  cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and

12  may limit the extent of discovery."  "[D]iscovery is available only in the discretion of the court

13  and for good cause shown."  Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).  Further,

14  Rule 6(b) states that the party requesting discovery "must provide reasons for the request," and

15  inter alia, "must specify any requested documents."

16          The Court finds that Petitioner has not demonstrated good cause for leave to conduct

17  discovery.  Petitioner argues that discovery is necessary because there is a material dispute

18  between the federal courts and state courts on who retained primary jurisdiction when Petitioner

19  was borrowed by the two writs of habeas corpus ad prosequendum.  Petitioner contends that the

20  state court consistently maintained that Petitioner was in primary custody of the federal court

21  when he was borrowed by writ.  Regardless, as discussed above, this Court has determined that

22  under Federal law the writ of habeas corpus prosequendum did not operate to divest the state

23  court of primary jurisdiction.  The writ only "loaned" Petitioner to federal authorities for

24  criminal proceedings. Brewer, 923 F.2d at 1366-67; Taylor, 164 F.3d at 444; Civiletti, 621 F.2d

25  at 693; Evans, 159 F.3d at 912.  Moreover, Petitioner's state sentence was credited with all of the

26  time in question.   Under 18 U.S.C. § 3585(b), Petitioner's federal sentence may not be credited

27  with the time he was borrowed by writ as that would grant him double credit.  Therefore,

28  Petitioner's federal sentence was properly calculated.  Additional discovery would serve no

purpose.  The motion must be denied.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED with prejudice;

2) Petitioner's motion for leave to conduct discovery is DENIED;

3) The Clerk of Court is DIRECTED to enter judgment for Respondent and terminate the instant action;

4) Insofar as the instant petition is filed pursuant to § 2241 petition and challenges the execution of Petitioner's federal sentence, a certificate of appealability is not required. Forde v. U.S. Parole Comm'n, 114 F.3d 878, 879 (9th Cir.1997).

IT IS SO ORDERED.

Dated:  __**April 14, 2014**__                    _____**/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE